May it please the court, your honor, my name is Vincent France. I'm an assistant attorney general with the state of Arkansas. I'm here today representing Trooper Legarian Cross of the Arkansas State Police. We are here on an interlocutory appeal from the denial of qualified immunity. Trooper Cross is entitled to qualified immunity for arresting Mr. Thurairajah for making unreasonable or excessive noise in violation of Arkansas's disorderly conduct statute. He's entitled to qualified immunity because Trooper Cross had a minimum arguable probable cause and also the law was not clearly established that in arresting Mr. Thurairajah that he would be violating his constitutional rights. On June 2nd 2015 at approximately 530 in the evening Trooper Cross had conducted a traffic stop of a minivan with a woman and her young children at a residence on Grand Avenue in Fort Smith, Arkansas. As Trooper Cross was conducting this traffic stop Mr. Thurairajah drove past and yelled an expletive, fuck you. It was heard across five lanes of traffic while Mr. Thurairajah was traveling at approximately 35 miles an hour and the expletive yelled by Mr. Thurairajah. Trooper Cross noticed that the children in the vehicle had an alarmed reaction and based upon that alarmed reaction decided to stop and arrest Mr. Thurairajah for disorderly conduct. Counselor are you relying on the noise portion of the statute or the obscenity portion of the statute? Your honor we're relying upon the noise portion of the statute and it's based upon that statute that Trooper Cross had arguable probable cause which entitles him to qualified immunity under both the Fourth Amendment wrongful arrest and the First Amendment retaliation claim. In fact according to this court in Aldrich v. Pope County arguable probable cause exists where an officer mistakenly arrests a suspect believing it is based on the totality of the circumstances known to the officer at the time and based upon the law that the officer is seeking to enforce. So you're saying it's completely irrelevant what he said it's just how loud he said it. Yes your honor. It's it's it's the loudness. So he would have likely been stopped if he just said go hogs. Well your honor the content of it goes to the mens re and whether or not there's evidence and in this case we argued that there was evidence that he recklessly caused alarm to the public which is a mens re element of the this case goes to the heart of the mens re and so if he was to yell go hogs it's doubtful whether or not he would have the appropriate mens re under the statute. So then the content is being considered it's not just noise. The determine mens re. He would have to be intended to cause alarm. Is that what you're arguing? Purposefully or recklessly your honor in this case he was at least recklessly in causing it. It's also important to note that the officer's subjective intent is not relevant to the probable to the arguable probable cause analysis. In addition officers aren't legal technicians. An arguable probable cause is whether the officer should have known that the law was clearly established and in this case the law was not clearly established. In January of this year in DC versus Westby the Supreme Court stated that clearly established requires that every reasonable officer would interpret the precedent to establish the particular rule the plaintiff seeks to apply. Thus the issue must be beyond debate with a high degree of specificity particularized to the circumstances faced by the officer and the constitutional violation must logically follow immediately from the prior cases. There's been no controlling authority nor is there a robust consensus of persuasive authority at the time for trooper Crosta known that arresting Mr. Thurage would be a violation of constitutional rights. Nor has there been any Arkansas case law cited that would place the issue beyond debate. MJ versus State is a 2011 Arkansas Court of Appeals case that the Mr. Thurage and the lower court relied upon. That case is not sufficiently particularized. In that case MJ was a 15 year old individual who yelled an expletive as an emotional response to suddenly seeing his mother being arrested and in fact the Arkansas Court of Appeals found that it was a close but MJ's actions constituted reckless and it stated that the described conduct by a 15 year old boy whose mother was being unexpectedly handcuffed in front of him does not constitute gross deviation from the standard of care that a reasonable person would have observed in his situation. In the case at hand Mr. Thurage it was not a spontaneous emotional response because there's no evidence in the record that Mr. Thurage knew any of the people that heard his expletive. It was not his mother and Mr. Thurage was 20 years old at the time. Thus there's been no case law cited by Mr. Thurage to show that the law was clearly established. Moreover there's been no robust consensus of persuasive authority. Robust meaning strongly formed or constructed in consensus agreement. Persuasive authority is from other Court of Appeals and the Supreme Court has clearly stated that one case does not equal a robust consensus because it does not place the constitutional issue beyond debate. Counsel what about Bufkins versus City of Omaha in the Eighth Circuit case where we held the police officers are expected to exercise greater restraint and response than the average citizen in the context of fighting words for example. Your Honor, Bufkins is distinguishable. That person to a security room when those statements were made and it was only heard by the police officers and so the court you know that's a key distinguishing factor is in this case minor children and the public heard the expletive whereas in Bufkins it was simply the police officers and so I'm still trying to get clear that you're saying this is just a noise this is a noise situation and not the content of the expletive it wouldn't matter if it was an expletive or some other utterance is you're saying that the police officer arrested him because he was too loud. He was too loud and he believed that he recklessly caused alarm or inconvenience to the public. But you do concede that the Arkansas Supreme Court has limited the obscenity prong of the statute to fighting words. Yes, Your Honor and you know we are actually waiving the argument that this case that he had the probable cause under the fighting words. But there's no amplification involved here. Your Honor, there's no amplification requirement or minimal decibel level in the statute itself and there's been no court interpretation of this specific statute that would have instructed or provided any guidance to Trooper Cross when making this arrest. Your Honor, I see that I'm in my rebuttal if I may reserve it. Yes, you may. Thank you. Mr. Hyman. Thank you and may it please the court. My name is Whit Hyman. I'm an attorney representing Eric Thurai Rajah. It took me a while to get that one right as well. So it's news to me that the state or in this case the Attorney Ward's portion of their argument. So my argument is going to be a lot shorter. However, I could not find you know any any cases that cited just a mere brief two-word noise was ever enough for any arrest. I think the facts are important here. We've got five lanes of distance between Mr. Thurai Rajah and a woman and children inside of a minivan and I think the estimate was 50 yards which would be approximately 150 feet. I believe I submitted a map to the court in District Court that showed it would be somewhere between 60 and 70 feet. Is there anything in the evidence in evidence indicate there was a measurement of decibel? No, you know there was the the facts in this case are very bare bones. There's no decibel measurement. There's no amplification of his voice. He merely yelled and in fact I I don't see how there was there was nothing. I think the the noise portion of this lawsuit as a defense to arguable probable cause came about for the first time after the close of evidence when we submitted our motions for summary judgment. Before that you will see no reference to excessive noise or unreasonable noise or even the word T-O-O-O loud noise. You'll only see the trooper say that the noise was extremely loud in one in his affidavit and in his police report. I believe he just uses the phrase extremely loud. He doesn't say that it hurt his ears. He doesn't say that anyone you know clapped their hands over their ears. He doesn't say it disrupted his traffic stop in any way other than through his choice to peel out and arrest and put my client in jail. If you look back at the actual police report, I don't think reading that would ever believe anyone to think that that this gentleman Mr. Thurairaja was arrested for the noise level. You see that the trooper states that it was the statement that and that statements effect on a female driver and the two children you know who he later approximates their ages to be seven and eight. This I don't see how a female driver or children would be hurt more by loud noises than than anyone else in the community. It's in his his emphasis on that really made it made it clear that it was the content and I picked up on on the Chief Justice's comment about what if he said go hogs. In my response to their motion for summary judgment, I believe I said what if the off what if he what if Mr. Thurairaja had yelled good job officer. Obviously that would have been equally annoying to the female driver of the vehicle. However, I don't think anyone here would ever think that he would be arrested for that or anyone anywhere. So it was a content-based violation? Yes, I if you if you... In other words, and your argument is there's a constitutional right to use vulgarity in the public setting as long as it's not too noisy. Yes, and for this for a for a one-off FU while running away I think that's clear. Now if he would have been approaching them and in some manner and and you know tearing off his shirt and frothing at the mouth you know that would be that would be quite different but in a sense he's running away while he's saying it. He's driving away at 35 miles per hour. I don't see how that I don't see how that isn't protected by multiple cases. So if it's just clear to me that if he would have said good job obviously he he would not have been arrested. There's and as far as finding an exact case on point you know the Supreme Court is quite narrowed as we all know. Cases that involve officer safety and and cases that involve you know use of force the Supreme Court always writes those opinions very narrowly. I believe they rely on you know White v. Pearl as well which it's just all these cases that they cite to restrict and find a case exactly on point are all use of force cases which that's not what we have here. I mean this is a clear-cut case about what you can and can't say. In other words I suppose you could phrase your argument as the Supreme Court the level of specificity depends upon the danger to the officer involved. I think they have yes because there's they go on and they always talk about exigency and safety and in this case there's there's been two criminal alleged criminal acts according to the trooper. The one where he we don't know what this woman was pulled over for and then what my client did which was not a criminal act and I I don't know why this trooper if he believes two criminal acts have been committed why choose one over the other. They both have he both has an equal duty to enforce both laws and and the disorderly conduct that is alleged to have happened is over and is is done and the guy is going away. So even if you read some of the statutes in Arkansas law if you honk your horn it has to be your car has to be you know outfitted with a horn that can be heard from at least 200 feet away. So if he would have horn while driving by this interaction the the defense here is having us believe that that would have been enough for Trooper Cross to pull out and and arrest Mr. Thurajai. So he would agree counsel that if he drove past the troopers home at midnight honking his horn continuously that that might be a different situation. Yes your honor and in fact every case where noise is an long period of time. I think the shortest case that we have here is is the Bufkins case and the MJV State case where in MJV State it was about 20 seconds and they said that's not disorderly conduct and in Bufkins where it was considerably less than that but it was somewhat continuous and she was loud and vigorous according to that case inside a confined room. You know there's case law on point that talks about how police officers have to you know Nichols v. Chacon where the where the state trooper gets flipped off by the tow truck driver while driving down the street and they took that to mean F you. I thought that was exactly on point there's public around and things like that so but there's there's cases on point the police officers are held to a higher standard when it comes to when it comes to hearing things like that. However there's never I don't think police officers are held to a higher standard when it comes to the loud noises that they can hear and that disrupt their activities. There's no talk of disruption there's no talk of he was unable to do his duties and that the woman in the car was unable to hear him. It was a one-off comment an epithet as the district court judge put it. Sorry because the they one argument my notes are now a little bit. Right I mean the trooper didn't even say that his ears you know were hurt by this level of noise. I don't think the human voice can possibly be expected to break this unreasonable or excessive noise portion of a disorderly conduct statute from 50 yards away. That then unaided human voice and and they're saying they're saying it's the effect on the women and children who are inside of a vehicle with presumably at least one window rolled down so as you can interact with this police officer. I think there's there's if we were to allow this to be conceived as anything other than a clearly established First I guess I I don't know what I would be shocked I mean this is just so basic that there's nobody complaining here like you know I think this court just came down in the Dewey case I hope I'm saying there DUHE that that was amplification over many hours. So and I believe under Belle v Keating this court has ruled that the officer had a duty to at least investigate whether or you know before he made this disorderly conduct arrest he could have he could have asked these people in the car did that hurt your ears you know were you are you somehow impacted by that level of noise. I mean I think that's kind of a ridiculous path to go down but so is this case. I simply I couldn't understand why anyone would say that this was a reasonable arrest. I thank you I think I'm eating into my time here I think I'm almost done but thank you so much and I appreciate your time. Mr. France your rebuttal. Your Honor's the law was not clearly established. Mr. Durage argues that you The statute doesn't require any hurt requirement. The statute doesn't require any decimal level. The statute does not require any durational level. What does it require? It simply requires your honor that the that the noise be unreasonable or excessive and that the person purposefully or recklessly causes public inconvenience annoyance or alarm. It's also an undisputed fact. Counsel don't we have to interpret that statute in a manner that would make it constitutional? Yes your honor and in Dewey this court found that that this exact provision of the excessive noise to be constitutional and it was decided in that September of this year in Dewey versus City of Little Rock 902 F period 3d 858 and interpreting that very statute and it's also undisputed. The facts are so different from this. Right your honor I mean I'm not I'm just saying that the court found that the written language of the statute was constitutional but it's also undisputed that the women and children were alarmed and I see that my time is up. I would just ask that this court find that Trooper Cross is entitled to qualified immunity because the law was not clearly established at the time of the arrest. Thank you. Thank You Mr. France. The court thanks both counsel for your appearance here before the court today and the argument you have provided in the briefing which you've submitted and we'll take your case under advisement.